78-08/MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
SIXTEEN THIRTEEN MARINE S.A.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SIXTEEN THIRTEEN MARINE S.A.,

                            Plaintiff,

    -against-

CONGENTRA AG,

                            Defendant.
------------------------------------------------------------------x

08 Civ. 1318 (HB)

**AMENDED**
**VERIFIED COMPLAINT**

Plaintiff, SIXTEEN THIRTEEN MARINE S.A. (hereinafter "STM") for its Amended Verified Complaint against Defendant CONGENTRA AG (hereinafter "CONGENTRA") alleges upon information and belief as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

NYDOCS1/299236.1

2. At all times material hereto, Plaintiff STM was and still is a foreign business entity duly organized under the laws of a foreign country with an address at 80 Broad Street, Monrovia, Liberia.

3. At all times relevant hereto, Defendant CONGENTRA was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 6301 Bahnhofstrasse 12, Zug, Switzerland.

4. On or about October 10, 2007, Plaintiff STM, as disponent owner of the M/V NICHOLAS M, entered into a maritime contract of charter party with Defendant CONGENTRA, as charterer, at an agreed rate of hire, to carry a cargo of 30,204 metric tons of soyabean meal from San Lorenzo in Argentina to St. Petersburg in Russia, with the charter expected to take approximately 60 days.

5. At 1100hrs on 2nd December 2007, during discharge at St. Petersburg, a relatively small quantity of damaged/wetted cargo was found below the surface layer of the cargo in Hold No. 4 only. At 1525hrs on 15th December 2007 a smaller quantity of damaged/wetted cargo was found in hold No. 2.

6. The amount of damaged cargo found by the Russian official inspectors was 150.12 metric tons in No.4 hold and 64.12 metric tons in No.2 hold.

7. After the discovery of the damaged cargo, Defendant CONGENTRA, the cargo receivers - Euroweg, and their agents - Anteks, acting in concert, demanded security for US$2,790,000 and threatened to arrest the vessel.

8. On 24th December 2007, the vessel's P&I Club (insurance company), The American Steamship Owners Mutual Protection and Indemnity Association Inc., posted security in the amount of US$322,271 plus interest and costs.

9. Testing of the cargo during the period in question determined that none of the damage was caused by contact with seawater damage – meaning that the damage was all due to pre-shipment conditions for which Plaintiff, STM, was neither liable nor responsible.

10. Nonetheless, and in bad faith, Defendant CONGENTRA and non-parties Euroweg, and Anteks refused throughout the material period to discharge the cargo and to segregate it as to good and damaged ashore, thereby extensively delaying the vessel from completing her discharge operations.

11. On or about 29th December 2007, Defendant CONGENTRA and non-parties Euroweg, and Anteks sought to delay the vessel further by requesting ultrasound tests within the holds. They had a contractual right to carry out such testing at the loadport but did not opt to do so. They threatened to obtain an order of the English High Court. Pliantiff STM pointed out that the requests were only seeking to delay the vessel and refused. No order of the English High Court was ever presented to the vessel thereafter. At about this time, Defendant CONGENTRA and non-parties Euroweg, and Anteks learned that the vessel's classification society had temporarily withdrawn the vessel's certificate of class pending repairs to a hydraulic lifting mechanism for the hatch covers of No.6 hold [where no cargo damage was found].

12. Defendant CONGENTRA and non-parties Euroweg, and Anteks at this point in time "persuaded" Russian Port State Control officials to go on board and detain the ship for a number of days in an attempt to gather evidence against the vessel to help support their dubious claims. The Russian Port State Control eventually released the vessel without any serious deficiencies having been found that would warrant detention. No explanation has been provided as to why Defendant CONGENTRA waited over three weeks after the first discovery of damaged cargo on board to involve the Russian Port State Control.

13. As a result of the improper actions of Defendant CONGENTRA and non-parties Eurowegm, and Anteks, the vessel missed the December 31, 2007 cancelling date, a date extended from the original December 23, 2007 cancelling date (ie. date on which the vessel must be delivered into service or the charterer has the option of cancelling the charter) for her next charter to non-party Britannia Bulkers.

14. Given that the market rate for like vessels was at that time decreasing and the NICHOLAS M could be replaced by Britannia at a cheaper rate, Britannia cancelled the charter.

15. On or about January 2, 2008, it was determined that the vessel had no problems which justified her detention by the Russian Port State Control authorities, the classification society having previously returned the certificate of class after the hydraulic mechanism was repaired prior to December 31, 2007.

16. Plaintiff STM had entered into the Britannia charter (a time charter trip for about 45 days at US$40,000/day to South America) with the objective of thereafter securing a cargo from South America to the Far East so as to be in the Far East for her scheduled dry-docking and Class intermediate survey in April 2008. In the Far East, repair costs are roughly a third of what they are in Europe.

17. Had the Britannia charter been performed, the vessel would have earned US$1,800,000 for Plaintiff STM.

18. Had the South America to Far East fixture been performed, Plaintiff STM estimates that it would have earned a further US$2,205,000 (52.5 days x US$42,000) plus an additional ballast bonus of US$550,000.

19. As a result of the delays due to the unwarranted and improper interference of Defendant CONGENTRA and its agents, the vessel lost its employment with Britannia.

20. The vessel stayed within St. Petersburg waters for as long as possible seeking to gain alternative employment but was eventually forced out into the Gulf of Finland.

21. Because the vessel is over 20 years of age and is no longer physically present within the port of St. Petersburg, it is not permitted to enter another port in the area to take a cargo due to the Baltic Ice Campaign Regulations.

22. Plaintiff STM has accordingly directed the vessel to depart the Gulf of Finland with no present employment.

23. To mitigate its damages, Plaintiff STM has fixed the M/V NICOLAS M on a substitute charter for a period of about 35 days at a hire rate of $35,703 per day pro rata, totaling $1,074,605 for the entire charter period.

24. As a result of the breach of charter and/or wrongful interference in its business by Defendant CONGENTRA and the conspiracy between Defendant CONGENTRA and non-parties Euroweg, and Anteks, Plaintiff STM has been damaged as near as best can be presently estimated in the sum of US$4,505,000 less amounts to be earned under the substitute charter in the sum of US$1,074,605 = US$3,430,395.

25. Defendant CONGENTRA has since entered into a separate charter party for use of the M/V PRIMERA.

26. CONGENTRA will be making a hire payment to non-party Dryships (Economou) in connection with the M/V PRIMERA in the approximate amount of US$2,000,000 to US$2,500,000.

27. CONGENTRA will be making this hire payment to Dryships (Economou) through non-parties Uniapro, OOO Euroweb Zerno, OOO Antks and/or QDV Complex Ltd., which would act under the circumstances as agents or as paying agents of CONGENTRA.

28.     The charter party provides for the application of English law and disputes between the parties to be resolved by arbitration in London, England and STM specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has been commenced as Plaintiff STM has appointed its arbitrator and given notice of the appointment to Defendant CONGENTRA which has, despite obtaining security from STM's P&I Club, not appointed its arbitrator.

29.     This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for Plaintiff STM's claims made or to be made in arbitration in London under English law, as agreed by the parties.

30.     As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

31.     Plaintiff STM estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in London arbitration will be $200,000. Interest anticipated to be awarded is estimated to be $510,723.32 (calculated at the rate of 7% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London).

32.     In all, the claim for which Plaintiff STM sues in this action, as near as presently may be estimated, totals $4,141,118.32, no part of which has been paid by Defendant CONGENTRA. Plaintiff STM specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure STM.

**Request for Rule B Relief**

33. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff believes that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant CONGENTRA AG (collectively hereinafter, "ASSETS"), including but not limited to charter hire payments made to Dryships (Economou) in connection with the M/V PRIMERA made in its own name and/or made for its benefit through, by or on its behalf through its paying agents Uniapro, OOO Euroweg Zerno, OOO Anteks and/or QDV Complex Ltd., including but not limited to ASSETS in its name and/or being transferred for its benefit at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

34. The total amount sought to be attached pursuant to the above is $4,141,118.32.

WHEREFORE, Plaintiff SIXTEEN THIRTEEN MARINE S.A. prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including $4,141,118.32 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter

hire, of, belonging to, due or being transferred from or for the benefit of Defendant CONGENTRA AG, including but not limited to charter hire payments made to Dryships (Economou) in connection with the M/V PRIMERA made in its own name and/or made for its benefit through, by or on its behalf through its paying agents Uniapro, OOO Euroweg Zerno, OOO Anteks and/or QDV Complex Ltd., including but not limited to ASSETS in its name and/or being transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendant in the London proceedings; and

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       February 19, 2008

                    FREEHILL HOGAN & MAHAR, LLP
                    Attorneys for Plaintiff
                    SIXTEEN THIRTEEN MARINE S.A.

                    By: _____
                        Michael E. Unger (MU 0045)
                        80 Pine Street
                        New York, NY 10005
                        (212) 425-1900

## ATTORNEY VERIFICATION

State of New York    )
                              ) ss.:
County of New York  )

      MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Amended Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                                                      _____
                                                                               Michael E. Unger

Sworn to before me this
19th day of February 2008

_____
Notary Public
MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08

NYDOCS1/299236.1                                                9