UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SIXTEEN THIRTEEN MARINE S.A.,               08 CV 1318 (HB)

                Plaintiff,        ECF CASE

-against-

CONGENTRA AG,

                Defendant.
-----------------------------------------------------------x

### Declaration of Alexander Nikolaevich Konykhov

I, ALEXANDER NIKOLAEVICH KONYKHOV, BEING DULY SWORN DEPOSES AND SAYS:

1. I am employed by OOO Anteks of 198303, St. Petersburg, Russia, Leninskiy prospect 110, build 1, lit B,53N.

2. I read, write and speak English.

3. OOO Anteks ("Anteks") provides ships' agency services in St Petersburg, Russia.

4. I am responsible for agency operations and together with Pavel Bessonov our General Director was responsible for the provision of agency services to the MV NICHOLAS M ("the Vessel") whilst it was in St Petersburg.

5. Anteks is a family owned business. The company is founded and owned by Grechanina Svetlana Petrovna the wife of Pavel Bessonov. The company was established in 2005. The company has been doing work as forwarding agent for OOO Euroweg Zerno since 2006. The company has 4 employees.

6. When the Vessel arrived Pavel Bessonov was doing forwarding operations related to the ship, helping me at times with agency, I dealt with the agency.

7. The ship agency services normally include attendance to vessel matters, settlement of port dues, arranging tugboats, arranging berthing, arranging formalities, ordering pilots, producing statements etc.

8. The role of Anteks as a forwarding agent includes arrangements with stevedores, ordering railway services, dealing with Customs formalities etc.

6014112.v4

/Konykhov/

9. On 28 December I was providing ship's agency services to the Vessel. I was informed by the stevedores that discharge of the Vessel would be completed that day by about 19.00 hours. As the departure of the Vessel was imminent at about 19.00 hours I ordered the Commission, i.e. the frontier guards and customs for around 22.30 hours and booked the pilot for around 23.00 hours. However, the Inspectorate responsible for pilots told me that because of the bad weather conditions it was not possible for the pilot to be dropped at the pilot station. It was suggested that I ask the Master if he could drop off the pilot at Big Kronstadt roads. When I made this suggestion to the Master he refused however. I therefore told the Inspectorate that the Master was not willing to do this. It was therefore agreed that I would call them the following day at around 07.00 hours. I called the Inspectorate responsible for pilots the following morning and as the weather had improved I ordered the pilot.

10. I therefore ordered the Commission again and telephoned the Vessel to update them. I spoke with Mr Shelyaev who is the senior stevedore, as it was important to the stevedores to have the berth free as soon as possible. He informed me that Port State Control was on board and was prohibiting the Vessel from sailing because of numerous deficiencies, i.e. it was full of holes and the hatchcovers could not be closed and even stevedores were asked to help with closing the hold by means of using a crane. I therefore telephoned Port State Control to find out what was going on. Port State Control refused to speak with me saying that their inspection was ongoing. All they would say to me is that I should attend the Vessel.

11. I cancelled the Commission and telephoned the Inspectorate to find whether the Vessel could sail with an open hatch cover. They replied that this was a matter for Port State Control.

12. I arrived at the Vessel at about 10.30 hours and was told that Port State Control would inform me of the outcome of their inspection once it had been completed.

13. I was on board the Vessel for the rest of the day. It was only after Port State Control had completed their inspection did I learn that the Vessel's class certificates had been withdrawn on 28 December. The Master had not informed me of this. Indeed, because the Vessel had lost her certificates it would not have been legally possible to shift her without the Port Captain's authorization.

14. Following the detention I heard rumours in the port that the reason that Port State Control visited the Vessel was because the crew had made complaints to the

6014112.v4

/Konychov/

International Transport Workers' Federation ("ITF"). It was said that on about 27 December 2007 Sergy Fishov the ITF representative had been on board the Vessel. I heard that the crew had complained that the Vessel was not seaworthy, they were underpaid and not being replaced. Accordingly, ITF had reported the Vessel to Port State Control to safeguard the crew. As a consequence when Port State Control boarded the Vessel they knew where exactly to look for defects.

15  I am informed that the Owners of the MV NICHOLAS M have alleged that Anteks together with Congentra and Euroweg Zerno persuaded Port State Control to go on board and to detain the Vessel. This is completely untrue. Prior to the Port State Control boarding the Vessel no one from Anteks had any communication with this organisation.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of March 2008, St Petersburg, Russian Federation.

Signed: _____ /Konyrhov/

6014112.v4