UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIXTEEN THIRTEEN MARINE S.A.,

                Plaintiff,

- against -

                              08 CV 1318 (HB)

CONGENTRA A.G.,

                Defendant.

**DECLARATION OF CAPTAIN DIONYSIOS DRYMONIS**

I, CAPTAIN DIONYSIOS DRYMONIS, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

1. I am the Safety and Quality Manager for Chian Spirit Maritime Enterprises Inc. I am instructed on behalf of Plaintiff Sixteen Thirteen Marine S.A. in this matter, and am authorized to make this Declaration on its behalf.

2. Chian Spirit Maritime Enterprises Inc. is the vessel manager of the M/V NICOLAS M, and I acted as visiting Safety and Quality Manager on board the vessel whilst she was at the port of St. Petersburg, Russia, for an ISM audit between 16th and 24th December 2007.

3. I submit this Declaration on behalf of Owners in opposition to Charterers' Motion to Vacate the Attachment. In particular, this Declaration will serve to correct the record

and point out misrepresentations in Charterers' motion which should be denied in all respects.

4. Insofar as the contents of this Declaration are within my own knowledge, they are true. Insofar as the contents of this Declaration are not within my own direct knowledge, they are true to the best of my information and belief based upon my review of relevant documents and discussions with persons having direct knowledge of the facts.

5. Supplementing the facts as detailed in the Declarations of John Krzywkowski and Captain Konstantinos Bourdis, set forth herein are additional facts and circumstances which I submit to correct particular misrepresentations alleged by Charterers in their motion papers.

6. I was on board the vessel on 19th December 2007 when Mr Sergey Fishov of the ITF came on board the vessel. He arrived at 1250hrs and left at 1357hrs. He came directly to the Master's office where a discussion took place between him, the Master and myself. He did not speak with any crewmembers on his way up to the Master's office and when I accompanied him to the gangway for his departure he agin made no contact with any of the crewmembers. At no time did he request to speak with any of the crewmembers.

7. Mr. Fishov is a man of between 50-60 years with greying hair. He asked whether "everything was OK on board" to which the Master replied in the affirmative. He asked whether the crew were happy and he got the same response. He asked whether there were any complaints about conditions on board and the response from the Master was in the negative. He was offered coffee - which he accepted and drank. He asked for the crew list and was supplied with a copy. He considered it carefully. He asked for copies of the crew employment contracts but was told that we were not at liberty to disclose them to him.

8. It was clear that his purpose for coming on board was to encourage a signing of the ITF Approved Agreement. He spent some time explaining why he thought that the vessel should sign one. Our response was consistent throughout - that we would not sign the ITF agreement because the vessel was subject to International Labour Organization contracts which were acceptable to the vessel's flag state. He stated nevertheless that it would be better if the vessel signed the IFT agreement. To be cordial, I said that it would be discussed with Owners for due consideration.

9. Eventually, he thanked us for our hospitality and said he had to leave. I walked him to the gangway.

10. On 27th December 2007, he called me in Greece to say that a small number of crewmembers who were due for repatriation and whose departure had been delayed had sought his assistance. I explained that there was a problem obtaining visas for the crewmembers because of the holiday period and the embassy being closed. I did say that if he knew of a better way of dealing with the visa issue during the holiday period

4

then I would be grateful if he could speak with our crewing manager, Captain Nick Dimou – which he did. I understand from Captain Dimou that they discussed the problem and Mr. Fishov admitted that there was no way of avoiding the holiday period delays. I understand that Mr. Fishov also spent some time trying to persuade Captain Dimou to adopt the ITF agreement.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Piraeus, Greece

March 20, 2008

_____
Captain Dionysios Drymonis