UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SIXTEEN THIRTEEN MARINE S.A.,                 :    08 CV 1318 (HB)
                                              :
        Plaintiff,                            :    ECF CASE
                                              :
    - against -                                 :    **REPLY MEMORANDUM OF LAW**
                                              :    **IN FURTHER SUPPORT OF**
CONGENTRA A.G.,                               :    **MOTION TO VACATE**
                                              :    **MARITIME ATTACHMENT**
        Defendant.                            :
------------------------------------------------------------X

      Defendant, Congentra A.G. ("Congentra" or "Defendant"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Reply Memorandum of Law in Support of its Motion to Vacate Maritime Attachment.

      Plaintiff, Sixteen Thirteen Marine S.A. ("STM" or "Plaintiff"), by way of submission of further false statements and strident misrepresentations to this Court has compounded its earlier missteps in a misguided effort to support its salacious claims that Congentra engaged in a conspiracy with, *inter alia*, classification society Bureau Veritas and the Russian Port State Control at St. Petersburg, Russia in order to tortiously interfere with Plaintiff's business relations. At the outset, it is to be observed that while STM hinted at such a fantastical story in its original, and then Amended Complaint, it failed to name either BV or PSC as Defendants and is proceeding in this action, as in the London arbitration, against Congentra alone.

      STM's Memorandum of Law and supporting papers are rife with false statements and misrepresentations. As shown below it is manifest that STM has intentionally deceived this Court, cannot be trusted to tell the truth, and, that because STM has failed to come forward with any credible evidence, beyond its own conjecture and surmise, to show that its allegations against

Congentra have any basis in fact, it cannot meet the "reasonable grounds" standard required of a plaintiff in a Supplemental Rule E(4)(f) hearing and its attachment should be vacated.

1. **STM's Reliance on False Testimony**

STM has submitted and heavily relies upon the false testimony of Captain Konstantinos Bourdis ("Capt. Bourdis") (the Operations Manager for Chian Spirit Maritime Enterprises (hereinafter "CSME") who acted at all material times as the Vessel's managers) concerning a December 28, 2007 telephone call between Capt. Bourdis and Congentra's Mr. Pavel Priymak ("Mr. Priymak"). Congentra submits a further Declaration from Mr. Priymak[1] addressing the telephone conversation and a copy of the recorded conversation. *See Second Declaration of Pavel Priymak dated March 25, 2008.* Under New York law, so long as either the caller or the receiver of the communication consents to the recording, it is not unlawful. See People v. Powers, 42 A.D.3d 816, 839 N.Y.S.2d 865, 866 (3d Dep't 2007). This is also the case for recorded conversations under federal law as has been construed by this Court. See U.S. v. Lee, 2000 U.S. Dist. LEXIS 6982, *3 (S.D.N.Y. 2000). *A copy of U.S. v. Lee is attached as Exhibit 1 to the Declaration of Kevin J. Lennon dated March 25, 2008 (hereinafter "Second Lennon Decl.").*

Should this Court have any hesitation to consider this evidence it is important to note that within a Supplemental Rule E(4)(f) hearing that "[A] court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing." See Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006). The court's rationale in Commodity Futures Trading Commission v. Commodity Investment Group, 2006 U.S. Dist. LEXIS 5772, *6, fn. 3 (S.D.N.Y. 2006) is similarly instructive. In CFTC v. Commodity Investment Group, the Court

---

[1] Mr. Priymak will be in attendance at the hearing before this Court on Thursday afternoon to provide testimony in support of Congentra's application. Congentra calls upon STM to similarly produce Capt. Bourdis to testify in person, under oath and subject to the penalty of perjury, before this Honorable Court.

2

allowed into evidence, over objection, tape recorded conversations because the involved proceeding was a preliminary injunction hearing in which the court observed that "ordinary rules of evidence do not apply" and "procedure of the hearing are less formal." *A copy of* <u>CFTC v. Commodity Investment Group</u> *is attached as Exhibit 2 to Second Lennon Decl. See also* <u>Salazar v. The Atlantic Sun</u>, 881 F.2d 73, 79 (3d Cir. 1989) and <u>Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigaciion, C.A.</u>, 169 F. Supp.2d 1341, 1357-59 (M.D. FL. 2001) which support a flexible approach, including for evidentiary issues, for hearings conducted under Supplemental Rule E(4)(f).

CSME, by whom Capt. Bourdis is employed, is a convicted felon by virtue of its January 2007 guilty plea in *U.S.A v. Chian Spirit Maritime Enterprises and Ventico Marine S/A*, Case No. 1:06-cr-00076 (D. Del.) to the crime of knowingly failing to maintain an Oil Record Book for the M/V Irene in which all unprocessed discharges of oily sludge and bilge wastes were to be recorded. *See Memorandum of Plea Agreement attached as Exhibit 3 to Second Lennon Decl.*

Under Federal Rule of Evidence 609(a)(2), STM's credibility in relying upon CSME/Capt. Boudris has been impeached because of Capt. Boudris' perjurious statement. CSME's knowing discharge of pollution into international waters is both a felony and a crime of dishonesty and STM's reliance upon CSME/Capt. Bourdis is *per se* probative of own credibility. *See* <u>Nathan v. Cooper</u>, 2007 U.S. Dist. LEXIS 90880, *8-9 fn. 4 (S.D.N.Y 2006). *A copy of* <u>Nathan v. Cooper</u> *is attached as Exhibit 4 to Second Lennon Decl. See also attached as Exhibits 5 – 12 to Second Lennon Decl. the Joint Statement of Facts, Judgment and Deposition Transcripts of the Crew of the MV Irene in U.S. v. CSME.*

In these circumstances, it is respectfully submitted that no other conclusion may be reached but that STM has ostensibly violated both 18 U.S.C. § 1001 and also 18 U.S.C. § 1621. Congentra will be delivering a copy of all papers had herein to the U.S. Attorney's Office for the Southern

District of New York, wherein the acts described have been committed, and the United States Department of Justice, Environmental Crimes Section, which oversaw CSME's criminal prosecution. However, Congentra has not made any attempt to gain an unfair advantage or improper leverage against STM in these proceedings with respect to the foregoing.

This Court is vested with a "broad inherent power" to assess "a full range of litigation abuses, including fraud upon the court." *See* McNunn v. Memorial Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 442 (S.D.N.Y. 2002) citing Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991). There is no valid excuse for the knowing falsehood submitted to this Court. CSME and STM, and the principals that control them, are themselves actively engaged in a deliberate effort to misguide and defraud this Court in their shameful effort to try and obtain security for bogus claims. Such fraudulent, deceitful conduct should not be tolerated. It is respectfully requested that, upon review of the evidence discussed herein, that this Court avail itself of its broad inherent power and vacate STM's maritime attachment.

2.  **STM's Misrepresentations to this Court**

STM casually terms its failure to properly set out in good faith its alleged claims to this Court during the *ex parte* stage of this proceeding as "inadvertent inaccuracies" and the product of "haste" in rushing to the Courthouse to file its dubious maritime attachment action. *See STM Memorandum of Law at 16.*

However, such so called "inadvertent inaccuracies" are tantamount to defective pleadings submitted by STM to this Court and, on this basis alone, the attachment can, and should, be vacated. In Centauri Shipping Ltd. v. Western Bulk Carriers KS, (07 Civ. 761) (RJS) (S.D.N.Y. Sept. 7, 2007), Judge Sullivan vacated a maritime attachment due to similar inaccuracies set forth in plaintiff's ex parte attachment application. *A copy of the decision in Centauri Shipping Ltd. v.*

4

*Western Bulk Carriers KS* is attached as Exhibit 13 to the Second Lennon Decl. In deciding to grant defendant's motion to vacate, Judge Sullivan made the following comments:

> If fifteen million dollar ex-parte attachments have now become so routine, so automatic, and so perfunctory as to render the supporting affirmations mere pro forma documents not worthy of being read before they are signed, or that misstatements of the sort at issue here can be brushed aside as mere clerical errors that are simply harmless in nature, then I must consider this entire are of law may have gotten off the rails, to the detriment of the defendants and the court.
>
> Rule B is a powerful and in some ways unprecedented tool available to plaintiffs in maritime actions. There are good reasons for it. But, it is premised on the assurance that plaintiffs and their counsel will act with care and candor in ex parte proceedings with the court. That clearly did not happen here.

*See* Centauri Shipping Ltd. *at 7, Exhibit 13 to Second Lennon Decl.* Judge Sullivan's commentary is equally applicable to the situation presented to this Court.

STM's blithe characterization of crucial factual misstatements and misrepresentations as "inadvertent inaccuracies" rings untrue. Further, STM incredulously appears to seek judicial approbation for the unseemly byproduct of its own "haste." However, such haste, and its byproduct, has no place in a Rule B proceeding, where, as noted by Judge Sullivan, parties such as STM routinely seek millions of dollars in security and, in isolated instances, such as in the instant case, do so for profoundly dubious claims.

It is well established that the Court is vested with the discretion to address abusive maritime attachment as it deems appropriate. *See* Contichem LPG v. Parsons Shipping Co., Ltd., 229 F.3d 426, 434-35 (2d Cir. 2000); Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006); and Great White Fleet Ltd. v. M/V Bosse, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. 2007). *A copy of the decision in* Great White Fleet Ltd. v. M/V Bosse[2] *is attached as Exhibit 14 to*

---

[2] STM's failure to address the holding in this case is notable since STM's counsel acted for the defendant in that case which succeeded in vacating the maritime attachment as a result of the abuse of procedure employed by the plaintiff.

5

*the Second Lennon Decl.* Because STM submitted defective and inaccurate allegations in its ex parte application its attachment should be vacated and the action dismissed with prejudice.

Congentra also brings to the Court's attention that even within STM's *mea culpa*, it makes yet another misrepresentation. STM freely admits it made a false statement to this Court in ¶15 of its Amended Complaint where it stated the vessel's classification certificates had been returned prior to December 31, 2007. *See STM Memorandum of Law at 16*. However, to be clear, this is not all that STM actually alleged in its Amended Complaint. Additionally, STM's *actual* false statement must be taken in the broader context of STM's threadbare conspiracy theory. Because STM failed to either re-print its own allegations, or submit its Amended Complaint as an exhibit to its opposition papers, Congentra provides below Paragraph 15 of STM's Amended Complaint:

> 15. On or about January 2, 2008, it was determined that the Vessel had **no problems** which jusitifed her detention by the Russian Port State Control authorities, the classification society having previously returned the certificate of class after the hydraulic mechanism **was repaired** prior to December 31, 2007.

*See STM Amended Verified Complaint attached as Exhibit 1 to the Lennon Declaration dated March 4, 2008 (emphasis added).* STM did not address anywhere in its opposition papers that Congentra had already shown this statement to be false. *See emails attached as Exhibit 6, non-conformity reports attached as Exhibit 7, and Port State Control detention report attached as Exhibit 5 to the Lennon Declaration dated March 4, 2008.* Thus, what STM has alleged in its Amended Verified Complaint is simply **false** notwithstanding the so called "inadvertent inaccuracy" excuse.

STM's false assertion that vessel repairs were completed by December 31, 2007 was necessary because it was required to deliver the Vessel under the Britannia Bulk fixture on dropping off last sea pilot St. Petersburg no later than the cancelling date of December 31, 2007. Because

6

STM knows that the outstanding repairs to the no. 6 hydraulic cylinder prevented it from validly tendering a notice of readiness to Britannia Bulkers, it falsely claimed to this Court that such repairs were completed prior to December 31, 2007. In fact, and as proven by Congentra, such repairs did not even commence before the New Year. Thus, STM was in no way simply mistaken, or inadvertently inaccurate, when it twice obtained Ex Parte Orders, by way of a deception committed on this Court, which it could not have carried off had it accurately pled facts to this Court.

Had STM truthfully presented the facts and evidence to this Court then ¶15 of its Amended Complaint would have looked as follows:

> *15.     On or about January 10, 2008, Owners completed rectifying the Vessel deficiencies which jusitifed her detention by the Russian Port State Control authorities who released the Vessel after 13 days of detention on January 11, 2008 after the classification society had returned the certificates of class and cargo safety construction on or about January 6, 2008 when it was satisfied that Owners had commenced required repairs to the No. 6 cargo hatchcover hydraulic mechanism with a class approved repair vendor and said repairs were completed on or about January 8, 2008.*

But of course, this is not at all what STM stated to this Court. Had the truth of the matters been stated to this Court, then STM would have been unable to claim that it was the actions of Congentra, and its vaguely referred to co-conspirators, that caused STM to lose its fixture with Britannia Bulkers. STM must continue its strident obfuscation of the facts to cover the glaring deficiencies in its allegations/claim. This is clearly improper. STM's claim has no basis in law or fact and therefore the attachment should be vacated.

### 3.     Although the London Arbitrators Will Decided the Merits, this Court Will Determine Whether Plaintiff's Attachment Should be Vacated

In support of its motion Congentra submitted a Declaration from Sir Anthony Colman in which he concluded, as an expert on English law, that it was "inherently improbable" that STM

would recover on its claims under controlling English law[3]. In contrast, STM has relied upon the legal opinion of its English solicitor John Kryzkowski who, relying on the perjurious statements of Capt. Boudris, and his review of Sir Anthony Colman's Declaration, unctuously declares that "I believe that Charterers have a case to answer." *See Declaration of John Kryzkowski dated March 20, 2008.*

STM, relying upon Mr. Kryzkowski, argues that where Sir Anthony Colman honestly (and properly) conceded that the London arbitration tribunal will need to determine if the charter party has been breached, and where Sir Anthony does not opine that STM's claims are frivolous or manifestly inequitable, that this must mean that Congentra's application to set aside STM's maritime attachment cannot prevail. This is simply not so. Sir Anthony Colman offered his own expert opinion as to the potential likelihood of success for STM's claims under English law and he refrained from intruding on the province of this Court, applying American law, to offer any opinion regarding the likelihood of success for Congentra's application to vacate the maritime attachment.

In order to dispel STM's spin on Sir Anthony Colman's initial Declaration, Congentra has submitted a Second Declaration from Sir Anthony Colman in which he makes quite clear, for the second time, his opinions for the consideration of this Court. He also comments upon the impact that Capt. Boudris' perjurious statement would have on similar proceedings under English law.

While the Second Circuit's decision in Aqua Stoli, *supra*, did resolve a confused state of affairs regarding the extent to which it was proper to require some additional showing (i.e., "need" for the attachment or a balancing test) beyond a *prima facie* case for a maritime attachment at a

---

[3] It is to be noted that STM is utterly silent on the quite real prospect that Russian law controls their claims since the alleged acts complained of took place in St. Petersburg, Russia. Congentra's efforts to determine whether Russian law allows a claim to be made out for "civil conspiracy to tortiously interfere with business relations" has, thus far, lead to the conclusion such a claim is not cognizable under Russian law. If so, and if Russian law governs the claim, it is self-evident that STM cannot meet the *prima facie* valid maritime claim requirement.

Supplemental Rule E(4)(f) hearing, it did nothing to alter the long standing requirement that a plaintiff must show "reasonable grounds" for its maritime attachment.

In order to recover on its claimed alleged conspiracy, STM must prove that the **predominant purpose** of Congentra's alleged civil conspiracy with, *inter alia*, Bureau Veritas and the Russian State Port Control, was to tortiously interfere with STM's business relations and cause economy injury thereby to STM. In the initial Complaint such an allegation was conspicuously absent and STM actually claimed that Congentra's actions were designed to obtain evidence for the cargo claim. In its Amended Complaint, STM repeats this attributed motive Congentra. *See Amended Complaint at ¶12, Exhibit 1 to Lennon Declaration dated March 4, 2008.*

Review of the Amended Complaint shows that this damning omission of a requisite element of STM's alleged cause of action has yet again not been pled. No doubt due to haste. The closest that STM comes to alleging that the **predominant purpose** of the alleged conspiracy was to tortiously interfere with its business relations and cause injury thereby is found at ¶24 of its Amended Complaint. Yet, all this language actually states is that as **a result** of the alleged conspiracy, STM sustained damages. It is respectfully submitted that this is insufficient as per the stated opinion of Sir Anthony Colman (with whom Mr. Kryzkowski is in full agreement that the English law case of Lornho PLC v. Fayed will control – *see John Kryzkowski Declaration at ¶11).*

Plaintiff is unable to demonstrate that "reasonable grounds" exist for its attachment. The "reasonable grounds" standard contemplates review not only of the plaintiff's allegations set out in the complaint, but also the evidence and arguments submitted by the parties. Understood properly, the Court's role at a Rule E(4)(f) hearing is not to require that a plaintiff to prove its claim, but it is essentially to ensure that "… their conclusions are 'merely holding that it is *likely*' that alleged facts are true." *See* Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d

9

275, 280 (S.D.N.Y. 2006) citing <u>North of England Protecting and Indem. Ass'n v. M/V Nara</u>, 1999 U.S. Dist. LEXIS 22375, * (E.D. La. 1999).

When this Court carries out its role here it is respectfully submitted that it will find that the potential for STM to recover against Congentra, under controlling English law, predicated on STM's alleged facts, for its articulated claim, is, to cite Sir Anthony Colman, ***inherently improbable***. As a result, maritime attachment should be vacated as it is frivolous not to mention manifestly inequitable. STM has heavily relied upon evidence submitted through CSME, a convicted felon, whose employee, Captain Bourdis, has perjured himself before this Court. When relying upon falsely submitted evidence, in support of facts it has misrepresented in its Amended Complaint, there is no likelihood that STM will be able to prevail on its alleged cause of action. As a result, the attachment should be vacated.

## CONCLUSION

Based on the foregoing, the Court should vacate the Amended Ex Parte Attachment Order pursuant to Admiralty Rules E(4)(f) and E(6), or, alternatively, reduce the Amended Ex Parte Order from $4,141,118.32 to an amount commensurate with the Plaintiff's provable damages, if any.

Dated: March 26, 2008
New York, NY

The Defendant,
CONGENTRA A.G.

By: _____
Kevin J. Lennon

LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 – fax
kjl@lenmur.com

10

## AFFIRMATION OF SERVICE

I hereby certify that on March 26, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Kevin J. Lennon