UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

SIXTEEN THIRTEEN MARINE S.A., 08 CV 1318 (HB)

Plaintiff, ECF CASE

-against-

CONGENTRA AG,

Defendant.

-------------------------------------------------------------------x

**Second Declaration of Pavel Priymak**

**I, PAVEL PRIYMAK BEING DULY SWORN, DEPOSE AND SAYS:**

1. I am the same Pavel Priymak who made a declaration in this matter on 4 March 2008.

2. There is now produced and shown to me a bundle of true copy documents marked "PP2" and a plastic wallet marked "PP3" containing a CD. Where numbers appear in square brackets during the course of this declaration they are references to page numbers in the bundle.

3. I adopt the same definitions as those used in my first Declaration.

4. I make this second declaration in order to address certain allegations made by Captain Konstantinos Bourdis of Chian Spirit Maritime Enterprises SA in response to Congentra's application to set aside the garnishment and attachment granted to the Plaintiff, Sixteen Thirteen Marine SA.

5. At paragraph 8 of Captain Bourdis' declaration he states that I telephoned him on 28 December 2007 on his mobile telephone at approximately 1600 hours Greek time and that I made "very hostile and menacing threats" towards his person, his company and the Vessel. Captain Bourdis' recollection of our telephone conversation is wholly untrue and demonstrably false.



6. I telephoned Captain Bourdis on 28 December 2007 at 2051 hours (Moscow time 1951 hours Greek time)[1]. I telephoned him because I had been given his name by the Master of the MV NICHOLAS M as being the decision maker. I wanted to speak with him because the SGS surveyor who had attended the Vessel in order to conduct the ultrasonic test had been refused access to hold numbers 2 and 4 by the Master. The surveyor had arrived at the Vessel at about 2000 hours (Moscow time) that evening. I wanted to try to persuade Mr. Bourdis to permit such test.

7. When I spoke with Captain Bourdis at no time did I use bad language nor did I use hostile and menacing threats towards him, the vessel or his company, which he attributes to me. As evidence of what was in fact said I attach to this declaration a complete transcript of the conversation [Pgs 29 and 30] and a CD which contains a recording of our telephone conversation [PP3]. I recorded conversations with the managers on that day as we had experience of the Plaintiff and their managers lying, i.e. when the SGS surveyor had sought and had been refused access to holds 2 and 4 on 15 December. I confirm that the recording of conversation submitted on CD is complete and has not been altered or edited in any way. As corroborative evidence of this I also attach a letter from Sinterra which provides our telephone services via OOO Ronimeks and a schedule showing all calls and their duration made by our company to Greek telephone numbers on 28 December 2007 [Pgs 31 - 34].

8. I categorically deny the Plaintiff's allegations that Congentra or I conspired with anyone to injure the Plaintiff's commercial interests by persuading Port State Control to inspect and detain the Vessel or by pressurising or otherwise influencing Bureau Veritas to physically remove the Vessel's classification and cargo safety construction certificates.

9. It is I think highly significant that Captain Bourdis chose to "recall" our conversation after Congentra had made its application in New York to set aside the Court's order of garnishment and attachment and served evidence which comprehensively destroyed all of the Plaintiff's allegations.

---

[1] Owners have not revealed what time precisely the BV surveyor attended the Vessel and physically removed its class certificates. The first entry on the Daily Log Sheet for Vessel's Visitors disclosed by the Plaintiff is timed at 1849 hours and the BV's surveyor's name does not appear so one can only assume that he visited the Vessel some time earlier.

10.    I will be attending the hearing in New York on 27 March 2008 and will be available to give oral evidence before the court if it considers it necessary.

**I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.**

**Executed this 25th day of March 2008, Moscow, Russian Federation.**

Signed:    ........................................



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

SIXTEEN THIRTEEN MARINE S.A.,

Plaintiff,

-against-

CONGENTRA AG,

Defendant.

-----------------------------------------------------------------x

08 CV 1318 (HB)

ECF CASE

This is the exhibit marked "PP 2" referred to in the Second Declaration of Pavel Priymak

Signed this 25th day of March 2008.

Conversation of Pavel Priymak with Capt. Costas Bourdis – Operation Manager – Chian Spirit Maritime
Phone call to Greece on 28 of March 2008 at 20:51 (Russian Time)

CB: Hello.
- Good afternoon could I speak to Captain Bourdis pls?

CB: Yes, who is calling?
- My name is Pavel Priymak, we are the charters of motor vessel Nicholas M and we are calling you in connection with the situation which we currently have developing because...

CB: from which charters?
- We are charterers of Nicholas M and our name is Congentra.

CB: from Congentra?
- Yes.
- Yeah, OK.
- So, my question is..
- What is your name?
- Pardon?

CB: What is your name? Your name?
- My name is Pavel Priymak, Mr. Priymak

CB: Priymak, yes.
- So, my idea was that so our surveyor has arrived onboard and unfortunately he is not allowed to perform the inspection of the hatch covers, which is essential in the circumstances where some cargo was damaged and practically your people are not allowing this operation. So in this case we have no other choice but to put the vessel off-hire and until this question is resolved ,so therefore I must...

CB: listen, listen, listen me a friend, listen my friend because your attitude of the charterers is not very well and you have to push the line very well, so listen to me carefully my friend, up to now the Congentra not filled all obligation as per Charter Party, yes?
- No, not at all, you have damaged the cargo, so there are many aspects which the Charterer, are in breach of the Charter, they have damaged the cargo, they have prevented us from discharge and I am sure that our lawyers will be able to prove in the courts all the aspects which we have raised.

CB: the cargo, the cargo already discharged, our P&I Club already attend to the matter together with the surveyors, the captain signed the paper that all cargo-holds are free and empty, no cargo on board. Now, already Congentra received an e-mail from the owners, regarding the situation. Did you read this e-mail?
- Yes we saw that mail but we fully disagree with that content and...

CB: OK, if you disagree, listen to me, there is no way, no way, now the master has to sail, he has to prepare the vessel for the next employment.
- No, we have not redelivered the vessel yet so the vessel is still in our hands therefore the master has to follow what he is told..

CB: No, no, no, the master has to follow concerning the cargo already completed...

-No, but...

CB: -the situation..
- until he exits the port, which he has to redeliver the last outward pilot station, so DOLSP, so far he has not redelivered, although he is free of the cargo. So now if you do not allow this inspection we put the vessel off-hire and the vessel will be off-hire as much and as long as it is necessary, therefore in order to avoid the costs for you we are telling you and we are suggesting that you have to allow this inspection immediately. Because it is I think also in your interest, because if you think that all holds are so perfect and immaculate then obviously you have nothing to hide and the sooner you conduct this inspection, the better.

CB: Listen, don't continue my friend, don't continue.. We have nothing to hide first of all the analyses of the results show that there is no ingress of seawater, our P&I Club, listen, listen, already attended the matter, already. already we have an agreement so please ask your surveyor to go outside of the vessel in order for the master to sail and don't make me problems, OK.

6049665

29

- No, I don't think that what you are telling is correct. So, then, I mean, if you disagree with that, do you mind our lawyers calling you, because I do not want, sorry…wanted to reach as quick and good solution to everyone as possible, but if you disagree with that we have no other choice but to put the vessel off-hire… do I understand correctly that you are the person who can make decision whether to allow inspection or not to allow?

CB: First of all, I'm not the decision-maker…

-Who, who is the decision maker?

CB: -I am not decision maker. You can contact with our office, with our office

- Could you tell me the name who is the decision-maker in the office?

CB: Listen, you have to request through the broking channel, you have to request through the broking channel

- there is no doubt, but we'll put the vessel off-hire and if you spend 8 days there, before the inspection is conducted you'll spend it. So, that is, I mean and that will be entirely at your expense. I don't want to expose you to these costs, so that is why I'm trying to find someone who can make decision. I am sure that it is not in your interest first of all, if the situation develops like this.

CB: So, I'm not the decision-maker, first of all, secondly already the Owners of the vessel sent a message to Congentra, so the matter for the time being is closed and if you have any any reservation you can put everything in writing through the broking channel.

- No, no, we will put the vessel off-hire and we will not command the Master to go to the last pilot station and that's it, and all the cost, because we will not pay the hire for this period, all the costs will be for you account. I don't advise…

CB: (interrupting) Your company has not paid the hire up to date, yeah?

- Well, in accordance with our calculation we don't have to pay the hire, because the vessel was off-hire for a number of days due to slower speed of discharging as result of….

CB: Listen, the vessel was continued the discharging with another cargo hold…

- but the discharging was substantially slower due to the damaged cargo...

CB: Yeah, yeah, this is your opinion, my friend, so...

- OK, my friend.

CB: nothing else to say, nothing else to say.

- My friend, in this case we put the vessel offhire and …

CB: (The Captain drops the phone)

30

[Logo of SINTERRA, telecommunications company]
SINTERRA

Outgoing # 1769 dt. March 24, 2008
In response to incoming #1841 dt. March 21, 2008

To: Director General
OOO "Ronimeks"
Mr. Daskovsky I.

Dear Ilen Nikolaevich,

In accordance with your request concerning presentation of details of phone calls made on 28.12.2007 from the telephones, provided by ZAO "Sinterra" to the company "Ronimex" in accordance with the contract# 3852 dt. 05.07.06, we confirm the phone calls to Greece and provide you with the statistical data.

Attachment:
Detailed calls made on December 28, 2007.

Director for Information technologies Bugaenko A.B.

Casehandler Ishenko T.N
Tel. (495) 647-77-77 (2266)

31

Detailed phone calls of Ronimex made on December 28, 2007 contract # 3852 dt.05.06.06, direction Greece

| Date | Commutator | Direction | Notice | Comments | Consumption, sec. | Consumption, min. | Amount |
|---|---|---|---|---|---|---|---|
| 28.12.07 20:51:36 | AXE01- | Greece, mob. | A: B:306942841734 | 4956480704:810306942841734:397:AXE01:A MORIG:MTT10:017990_8721 | 397 | 7 | 80.08 |
| 28.12.07 20:25:21 | AXE01- | Greece | A: B: 302104294777 | 4956480704:810302104294777:272:AXE01:A MORIG:MTT10:017990_3917 | 272 | 5 | 50.85 |
| 28.12.07 20:24:11 | AXE01- | Greece | A: B: 302104294777 | 4956480704:810306942841734:49:AXE01:AM ORIG:MTT10:017990_3066:: | 49 | 1 | 10.17 |

Signature of Ishenko T.N.

32



Исх. № 1769 от 24.03.2008г.

На вх. №1841 от 21 марта 2008г.

Генеральному директору
ООО «Ронимекс»
Г-ну Дашковскому И.Н..

Уважаемый Илен Николаевич!

В соответствии с Вашим запросом по предоставлению детализации вызовов по телефонным номерам, выделенных компанией ЗАО «Синтерра» компании ООО «Ронимекс» согласно Договору № 3852 от 05.07.06 г., на дату 28.12.07 г. подтверждаем наличие звонков по направлению Греция и предоставляем Вам статистические данные.

Приложение:
Детализация вызовов на 28.12.07 г.

**Директор по информационным технологиям** **Бугаенко А.В.**

Закрытое акционерное общество * СИНТЕРРА * МОСКВА *

Исп. Ищенко Т.Н.
Тел. (495) 647-77-77 (2266)

www.synterra.ru | Телефон: (495) 647 7777 Факс: (495) 647 7776 | 109147, Москва, Воронцовская ул., дом 35Б, корп. 3

33

**Детализация звонков компании ООО "Ронимекс" по договору №3852 от 05.06.06г. за 28 декабря 2007г. по направлению - Греция**

| Дата | Коммутатор | Направление | Примечание | Комментарии | Потребление,сек | Потребление,мин | Сумма |
|---|---|---|---|---|---|---|---|
| 28.12.07 20:51:36 | AXE01- | Греция моб. | A: B:306942841734 | 4956480704:8103069428417З4:397:AXE01:AMORIG:MTT1O:017990_8721 | 397 | 7 | 80.08 |
| 28.12.07 20:25:21 | AXE01- | Греция | A: B:302104294777 | 4956480704:810302104294777:272:AXE01:AMORIG:MTT1O:017990_3917 | 272 | 5 | 50.85 |
| 28.12.07 20:24:11 | AXE01- | Греция | A: B:302104294777 | 4956480704:810302104294777:49:AXE01:AMORIG:MTT1O:017990_3066:: | 49 | 1 | 10.17 |

/Ищенко Т.Н./

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

SIXTEEN THIRTEEN MARINE S.A., Plaintiff,

-against-

CONGENTRA AG, Defendant.

----------------------------------------------------------------------x

08 CV 1318 (HB)

ECF CASE

This is the exhibit marked "PP 3" referred to in the Second Declaration of Pavel Priymak

Signed this 25th day of March 2008.